SPOONEMORE v. CABLES *et al.*, *Appellants.*

1. **Impeachment of Witness.** When, in a proceeding to contest the validity of a will, one of the attesting witnesses has sworn that he had no recollection of having signed the attestation in the presence or at the request of the testator, his affidavit made before the judge of probate in favor of the will, and containing contrary statements, is admissible in evidence by way of impeachment, after his attention has been properly called to it.

2. **Revocation of Will**: INSTRUCTIONS. When, in such a proceeding, evidence has been given tending to show that after the execution of the will, the testator made other provision for the principal devisee in lieu of that made in the will, the jury should be instructed as to what constitutes a revocation, and it is error to refuse a proper instruction on that subject.

3. **Will**: INSTRUCTION. When, in such a proceeding, the real question is whether the testator was of sound mind at the time of signing, it is error to instruct the jury that the will is void if he was so feeble in mind or body that he was not able to see, and did not see the attesting witnesses sign. Such an instruction is calculated to confuse the jury and to withdraw their attention from the real issue.

4. **Will**: DECLARATIONS OF A TESTATOR made after the execution of his will, tending to show that it was not satisfactory to him, and that he had made, or would make other dispositions of his property, are not admissible in evidence for the purpose of impeaching the will, (*following Gibson v. Gibson, 24 Mo. 227, and Cawthorn v. Haynes, Ib. 237.*)

*Appeal from Worth Circuit Court.*—HON. SAMUEL A. RICH-
ARDSON, Judge

Action to set aside the will of Joseph Cables, de-
ceased. Testimony was given on the part of the contes-
tants tending to show that after the testator recovered
from the illness during which the will was made, he had
said that it was not what he thought it was; that it
did not suit him because it made so great a difference be-
tween the children; that he was sick when he made it, and
did not think he could have been in his right mind; that
he was going to take it in (according to some witnesses,)
or had taken it in, (according to others,) and would burn
it and make a new one; that his son Michael, (the prin-
cipal beneficiary,) had been a good boy to him and ought
to have something; that to make it right he had deeded
Michael about one hundred acres, and what was left after
he and his wife got through with it, should go to all the
children, to be divided among them. On the part of the
proponents testimony was given in rebuttal of this. The
other facts appear in the opinion.

*Bennett Pike* with *Lewis & Gibson* for appellants.

1. The affidavit of Cannon should have been admit-
ted in rebuttal and impeachment. His attention had been
called to it after he had sworn that he did not sign the
will in the presence or at the request of the deceased.

2. Defendant's fourth instruction should have been
given to prevent the jury from inferring a revocation of
the will by the deceased, from a subsequent conveyance by
him of a part of the land devised to Michael. The intro-
duction of evidence of the conveyance of a part of the
land devised to Michael, subsequent to the making of the
will, could only be intended to show a revocation by acts
in *pais*, and the jury should have been instructed that such
conveyance did not have the effect of a revocation.

3. The second instruction in behalf of plaintiff, was calculated to mislead the jury. The evidence on both sides shows that the will was attested in the same room in which the testator was, and immediately after he signed the same, and that there was no change in his condition between the signing by him and the attesting by the witnesses. In that state of the case, the whole issue turned upon the capacity of the deceased to make a will. This instruction left it to the jury to determine,—not his capacity to make the will,—but his capacity to understand whether the same was duly attested. If he was of unsound mind when he signed the will, it was a nullity, and the fact of its attestation could have no possible effect. If of sound mind when he signed it, and no stupor intervened before the same was attested, then the instruction was unsupported by the evidence.

4. The third instruction given for plaintiffs in effect tells the jury that they may consider the declarations of the testator in connection with evidence that tends to show insanity, either as a narrative of facts, or as showing his mental condition at the time of making his will, for neither of which purposes are they at all competent. *Gibson v. Gibson,* 24 Mo. 227 ; *Jackson v. Kniffen,* 2 John. 31 ; *Moritz v. Brough,* 16 Serg. & Rawle 405 ; *Comstock v. Hadlyme,* 8 Conn. 263.

*John Edwards* for respondents.

1. No proper foundation was laid for the admission of the affidavit of Cannon by way of impeachment. He only denied stating in the affidavit that the testator was of sound mind. His denial of other statements in the probate court has reference to evidence given in that court outside of the affidavit.

2. Defendants' fourth instruction was properly refused. The petition contained no allegation that the will had been revoked, and the evidence that the testator, after

making the supposed will, had conveyed part of the land mentioned in it to Michael, was not offered to show a revocation, but to show that the testator was not aware of its provisions on account of mental incapacity at the time of executing it. Hence the instruction was irrelevant.

3. Plaintiffs' second instruction is correct. Wag. Stat., p. 1364, § 3; 2 Greenl. Evid., (12th Ed.) § 678; 3 Phil. Evid., (5th Am. Ed., Cow. & H's. notes,) 764, *760; 1 P. Williams, 740; 1 Redfield on Wills, Ch. 6, § 5, p. 248, note 6; 4 Kent Com., 516; *Right v. Price*, 1 Douglas 241; *Norton v. Bazett*, 5 Am. Law Reg. (O. S.) 52.

4. The declarations of deceased are admissible in connection with the other evidence offered, tending to show unsoundness of mind, or undue influence exercised over the testator at the time of making the will, as tending in the same direction. *Cawthorn v. Haynes*, 24 Mo. 236; *Norris v. Sheppard*, 20 Penn. St. 475; *Robinson v. Hutchinson*, 26 Vt. 38; *Beaubien v. Cicotte*, 12 Mich. 459.

NAPTON, J.—This was a proceeding in the circuit court of Worth county by a portion of the heirs of Joseph Cables to contest the validity of a will of said Cables, which had been duly admitted to probate in the probate court of said county, on the ground that the testator was of unsound mind at the date of its execution, and that it was not duly executed, and that it was procured by one of his sons, Michael, through fraud and undue influence. The jury found against the validity of the will under instructions of the court. It is only necessary for this court to consider the propriety of the instructions and the exclusion of some evidence offered.

1. W. H. Cannon was one of the subscribing witnesses to the will. He was examined as a witness by the contestants. He stated that the testator did not ask him to witness the will, but that T. K. Russ, (a justice of the peace who wrote it,) asked him; that the testator did not move his eyes; that they were half closed; that he did

not hear the will read; that he signed it because Russ asked him to do so; that he did not see the testator sign it; that he had no recollection of the old man's making his mark, or directing T. K. Russ to write his name; that he had no recollection of signing the will at the request of the testator or in his presence. The affidavit of this witness in the probate court was shown to the witness, and he admitted it was his affidavit; that he signed it, but did not remember that he stated to the court that the witnesses signed at the request of the testator. After the close of contestant's evidence, the defendants offered the affidavit of Cannon, which was as follows:

STATE OF MISSOURI, }
County of Worth. }

In the probate court of Worth county. In the matter of proving the last will and testament of Joseph Cables, late of Worth county, deceased. On the 27th day of February, 1874, before me, W. L. Neal, judge of probate court within and for said county, personally came W. H. Cannon, who, being by me duly sworn, on his oath says, he was present and saw Joseph Cables sign the foregoing instrument, purporting to be his last will and testament, and heard him publish and declare the same to be his last will and testament, and that the deponent and T. K. Russ and Joseph Kenan, the other attending witness, subscribed their names thereto, as witnesses to the same, in the presence and at the request of the testator, and in the presence of each other.

(Signed.)                         W. H. CANNON.

Subscribed and sworn to before me, the day and year above written.

(Signed.)                         W. L. NEAL,
                                  Judge of Probate.

The court refused to permit the affidavit to be read to the jury, and defendants at the time excepted. The exclusion of this affidavit, we think, was erroneous. It contradicted the testimony of the affiant on the witness-stand

in several particulars. His attention was called to it, and he admitted signing it. And this affidavit, made in the probate court just after the death of the testator, is certainly evidence to show what he then thought when his memory was probably better than it was at the trial.

2. The court refused to give the 4th instruction asked by the defendants, which was as follows: If the jury believe, from the evidence, that the instrument of writing read in evidence, purporting to be the will of Joseph Cables, deceased, was his will, the same could only be revoked by a subsequent will, in writing, properly executed by him, or by burning, canceling, tearing, or obliterating the same, by the testator, or in his presence, and by his consent and direction. This instruction is a mere copy of the 4th section of our statute, except that so much of the section is omitted as refers to certain modes of revocation, of which there was no evidence in the case. The only objection made to it is that it was an abstraction. The disputed will gave to Michael, the only living son of the testator, his home farm, containing some 230 acres, which, with the improvements, was estimated to be worth $6,000, whilst his personal estate, estimated at not over $2,000, was divided equally among all his children, who were married daughters, and his grandchildren by a deceased son. There was no evidence that the testator was ever of unsound mind before the sickness during which his will was executed, or after he recovered from the attack which he survived for nearly four years. He procured the will from the magistrate, who had taken it to his house at his request, when executed, about a year after it was made, and retained it among his deeds and other papers till his death. About three years after the execution of the will he made a deed to his son Michael, for 52 acres of the same land given to him by the will, and this deed, along with certain declarations of his admitted in evidence to show that this conveyance was to be in some way a substitute for the will, was calculated to mislead the

jury, unless the law on the subject of revocation was explained to them. The instruction should have been given.

3. The following instructions were given by the court for the contestants: 2. It is essential to the validity of the will in controversy, that it should be attested in the presence of the testator, Joseph Cables, and with his knowledge or consent, but such presence means a conscious presence, and if the jury believe that at the time said will was made, Joseph Cables did not know or consent that Joseph Kenan and William H. Cannon and T. K. Russ, or any two of them, subscribed their names to such instrument as witnesses to his will, or if they believe that two or all of said witnesses signed said instrument as such witnesses, in the same room where Joseph Cables then was, but at that time he was so feeble in mind and body as not to be able to see, and did not see said witnesses when they so attested said instrument, or did not know what they were doing at the time, and did not afterwards, while said witnesses were in his presence, know or approve such witnessing while his mind was capable of knowing and approving the same, then such instrument is not his valid last will and testament, and the jury will so find. 3. Although the declarations, shown by the evidence to have been made by Joseph Cables, concerning the execution or contents of the will in controversy, cannot be considered by the jury as sufficient to revoke the formal execution of said will, yet the jury may consider such declarations in connection with the evidence, if any, tending to show, that at the time of the execution of said will, Joseph Cables was of unsound mind and incapable of knowing or understanding what disposition of his property had been made by said will. 4. If the jury believe from the evidence in this case, that at the time of the execution of the paper writing in controversy in this case, and purporting to be the last will and testament of Joseph Cables, deceased, the said Cables by reason of the condition of his body or mind, was unable to read said instrument, and if

the jury further believed that he was influenced by any person to make said will, then it is necessary that the jury be satisfied that after said supposed will was written, the same was read over to, or understood by said Joseph Cables, and that he understood its contents; and if the jury believe that said instrument was not so read over or understood, it is not his last will and testament, and the jury will so find. 5. Although unsoundness of mind or undue influence, are not to be presumed, but must be proved, yet direct proof thereof is not absolutely required, but such unsoundness or influence may be found by the jury from all the facts and circumstances shown in evidence, if they are satisfied that such facts and circumstances are sufficient to authorize such finding.

In trying the issue of will or no will the inclination of juries, as a matter of course, will be where the will contains an unequal distribution of the testator's property, to find for the contestants, and especially if any plausible pretext is furnished them from the bench to enable them conscientiously so to find. In the second instruction above quoted the court tells the jury that if the testator was " so feeble in mind or body as not to be able to see, and did not see said witnesses, when they so attested said instrument," then said instrument was not valid. In view of the testimony it is not easy to say what was meant by this instruction. The testator was very low with cholera morbus, as his physician stated, and was propped up on pillows, with his eyes half closed occasionally, so that he could incline his head either towards those present or from them. Does the instruction mean that if, at the time the witnesses signed the will, his head was inclined from them, so that it was impossible for him to see them, the attestation was therefore void? The testator and the witnesses were in the same room, sixteen by eighteen feet, and all the cases, English and American, agree that when the testator was in a position where, by the mere act of volition, he could have witnessed the attestation, it is all that is re-

quired. If the feebleness of mind or body spoken of in this instruction, as preventing the testator from seeing the attestation, was not such as grew out of any particular position of the testator in the bed, but from a total prostration of bodily and mental powers, then the only effect of the instruction was to complicate and multiply the questions propounded to the jury. The will was void, whether witnessed or not, unless there was some sudden change occurring after it was written and read to the testator, and before it was signed, of which there was no evidence. This instruction concerning the attestation was unnecessary, and calculated to confuse the jury, and withdraw their attention from the real issue before them, which was whether the testator was of sound mind and knew what he was about when he signed the will.

4. The value of the declarations of the testator, made before and after the will, is discussed by Judge Leonard in the two cases of *Gibson v. Gibson* and *Cawthorn v. Haynes,* (24 Mo. 227, 237,) and we have nothing to add to what was there said.

5. In the 4th instruction given by the court for the contestants, the court propounds to the jury the question, " if the jury believe that he was influenced by any person to make said will." Now, although there was a charge of undue influence and fraud contained in the petition, I have been unable to observe in the testimony, from beginning to end, any evidence, even the slightest, that Michael Cables, his youngest son, who at the date of the will was not twenty-one years old, ever even so much as asked his father to make such a will. He states in his own evidence that his father had frequently told him that he intended him to have the home place; and his step-mother, who was a witness for the contestants, states that when the old man was supposed to be near his end, Michael reminded her to speak to his father on this subject, but she states that she did not say a word to him on the subject. That he was very much attached to this son, and doubtless in-

tended long before his will was executed to leave him his farm, is probable, and it is possible that such a devise was unjust to his daughters, but of that he was the sole judge. The testator lived three years and six months after the date of this will; had it in his possession more than two years; knew its contents, never made any other, but put it away carefully among his papers.

The judgment is reversed, and the cause remanded. The other judges concur.

REVERSED.