VIRGIL L. HACKLEMAN, Respondent. v. THE KANSAS CITY RAILWAYS COMPANY, Appellant.

Kansas City Court of Appeals.   December 1, 1919.

1. **NEGLIGENCE: Fire Truck: Right of Way.** In an action for personal injuries received as a result of a collision between a fire truck and a street car based upon ordinances which give the fire truck when going to a fire the paramount right-of-way, and making it the duty of the person in charge of a street car to bring the same to a stop when a fire truck going to a fire shall approach such car, there is no error in an instruction which assumes that the fire truck was going to a fire in the absence of evidence that it was not going to a fire and where the case was tried by both sides on the theory that it was the duty of the motorman to stop the car if he knew, or by the exercise of due care could have known, it was approaching.

2. ————: ————: ————: **Duty of Motorman.** A motorman is not excused for failure to bring his car to a stop unless he did not know or did not have good reason to believe the fire truck was approaching, though he has no knowledge that it is going to a fire.

3. ————: ————: ————: ————: **Safety of Passengers.** Where both sides submit instructions making the defendant liable only if the motorman, after gaining knowledge of the approach of a fire truck, could have brought the car to a stop in the exercise of due care but failed to do so, it is not error to omit as a feature in the instruction a requirement that he could bring the car to a stop with safety to the car and the passengers thereon.

4. **EVIDENCE: Opinion as to Speed: Qualification of Witness.** A witness who has testified that he has driven all his life and that he has driven a fire truck with speedometer on it for ten months is qualified to testify as to the speed of a street car.

5. ————: **Written Statement: Impeachment.** It is not improper to refuse to admit a written statement for the purpose of impeaching a witness where all that the witness had been asked with reference to the statement was whether or not he had signed it, and where he was not permitted to read it to see if it was the same statement he had made without change or alteration, although request was made that he be allowed to read it. Under such circumstances the statement has not been sufficiently identified.

Appear from Jackson Circuit Court.—*Hon. Allen Southern*, Judge.

AFFIRMED.

*Bellemere & Langsdale* and *Cliff Langsdale* for resepondent.

*R. J. Higgins, Ben T. Hardin, Roscoe P. Conkling* and *Charles L. Carr* for appellant.

BLAND, J.—Plaintiff recovered a verdict and judgment in the sum of $1000 for personal injuries sustained by him as the result of a collision at the intersection of 4th Street and Grand Avenue, in Kansas City, between one of defendant's street cars and a fire truck belonging to the municipality of Kansas City, Missouri.

At the time of the accident there was in force an ordinance of the city providing that "the fire department shall have the paramount right-of-way over and through all streets, avenues and alleys when going to a fire," and that when such "fire apparatus going to a fire or answering an alarm for fire, shall approach close to another car upon any street railroad track in Kansas City, it shall be the duty of the person in charge of such car to cause such car to come to a full stop and

so remain until after such . . . fire apparatus has fully passed by such car or has come to a full stop." These ordinances were pleaded in plaintiff's petition.

Defendant insists that the court erred in giving plaintiff's instruction No. 1, for the reason that the instruction assumed that the fire apparatus with which its car collided was going to a fire or answering an alarm for fire and that it "fails to submit to the jury the issue as to whether or not the motorman of appellant's car knew, or by the exercise of ordinary care should have known, that the fire truck involved in the accident was proceeding to a fire or answering a call to a fire." There is no evidence, or inference from the evidence, that the fire truck in question was not going to a fire and, therefore, it was harmless for the instruction to assume this fact. The case was tried on both sides on the theory that it was the absolute duty of the motorman to stop the car if he knew, or by the exercise of ordinary care could have known, that the fire apparatus in question was approaching the crossing, regardless as to whether the motorman knew it was going to a fire. Plaintiff introduced evidence tending to show that the fire truck was ringing a loud bell for several blocks before it reached the crossing and that the motorman was otherwise notified of the approach of the fire truck. The motorman testified that there was a building erected on the corner and he was unable to see down 4th Street until he arrived at the property line and at that time the apparatus was twenty or thirty feet from Grand Avenue, approaching the same (the street car was running upon the latter street); that as soon as he saw the apparatus approaching he did all he could to stop but was unable to avoid the collision. There was no claim that the motorman knew or ought to have known of the presence of the fire truck but failed to stop because he did not have reason to believe it was going to a fire. In defendant's instruction No. 2, as offered by it, the jury were told that under the ordinances the fire wagon had preference

over defendant's street cars on the street of Kansas City but it is not the duty of the motorman to know or to anticipate that a fire truck is approaching a street car crossing at any given time and place, nor is he expected to know that there is a fire at any particular place, and if the motorman in this case exercised reasonable care to stop his car after he knew that the fire truck was approaching Grand Avenue, then he did all the law required him to do; "and if the jury belieeve from the evidence in this case that when the motorman in charge of the car first had knowledge that the fire truck was approaching in 4th Street, the street car and fire truck were so close together that a collision was inevitable, and that the motorman was unable with the appliances at his command to prevent the collision, then plaintiff is not entitled to recover." The case must be submitted in this court on the same theory upon which it was tried in the lower court. [Heller v. C. &. A. Rd. Co., 209 S. W. 567.] However, we think that plaintiff's instruction was proper in any event. Uncontrolled fire is the common enemy and if not curbed often results in great disaster to life and property. It would not do to allow a motorman to say "I had reason to believe that a fire apparatus was coming but I did not think it was going to a fire" when the apparatus was actually going to a fire but was impeded or prevented from so doing by the motorman not stopping his car. The ordinances give the fire apparatus the right-of-way when going to a fire. This right-of-way is an absolute one (Duffghe v. Met. St. Ry. Co., 96 N. Y. Suppl. 324, 325) and a motorman is not excused when it develops that the apparatus was going to a fire unless he did not know or did not have good reason to believe that it was approaching.

It is urged that plaintiff's instruction No. 1 fails to submit to the jury the question as to whether the car "could be stopped with safety to the car and passengers thereon." The instruction told the jury that it was duty of the motorman to stop the car if

he could do so "by the exercise of ordinary care with the use of the appliances at hand." Ordinary care was defined in plaintiff's instruction No. 3. It is not necessary for us to say whether this does not meet defendant's contention nor is it necessary for us to hold that the absolute duty of the motorman to stop his car does not require him to so stop it at all events if it is possible for him to do so, for the reason that if there was any error in the omission of plaintiff's instruction, the same was joined in by defendant in its instruction quoted supra.

It is urged that the court erred in permitting the driver of the fire truck to testify as to the speed of the street car just prior to the accident, for the reason that the witness had not shown himself qualified and the evidence shows that he was not in a position to judge the speed of the car. The witness was asked what experience he had had in observing the rate of speed at which wagons were driven along the street of the city, and he answered, "well, I have some, because I have been driving all my life, so I ought to know." He testified that he had been driving the fire apparatus for about ten months; that he had driven automobiles with speedometers on them. From this evidence there is no question but that plaintiff was qualified to testify on this question. [Walsh v. Mo. Pac. Ry. Co., 102 Mo. 582, 686; Stotler v. C. & A. Rd. Co., 200 Mo. 107; Moon v. St. Louis Transit Co., 237 Mo. 425, 431, 432.]

It is urged that the witness did not testify that he had observed the speed at which wagons and cars travel along the streets of the city or elsewhere, and that he had not observed the speed of street cars and compared their speed with the speed of other moving objects. As before stated, he testified that he had been driving all his life and that he had driven automobiles with speedometers on them. Under the cases cited there is no question but that the witness was qualified to testify on the subject. As to the contention that he was not in a position or situation to judge of the speed of the

car: He first saw the car when it was seventy-five feet away. He observed it travel over a space of eighty feet. The fact that he himself was driving at a high rate of speed and had to pay some attention to his own work in trying to extricate himself from a dangerous situation, was a matter to be argued to the jury, going to the weight to be given to his evidence rather than to be urged in this court in support of the contention that he should not have been allowed to testify at all on the subject.

It is urged that the court erred in permitting plaintiff's witness Egner, who did not see the accident, to tesify as to the location of the fire truck and horses sometime after the accident, when there was no showing, as defendant contends, that the position of the truck was the same at the time he saw it as it was at the time of the accident. There is evidence that the position of the truck was substantially the same at the time he saw it as it was immediately after the accident. But it seems that the evidence was not introduced on the question as to how far the car ran after it struck the truck but was introduced for the purpose of showing the condition of the truck and horses after the accident. The witness testified that the truck was "pretty badly broken, the axle was bent and the wheels broken."

It is insisted that the court erred in refusing to allow a written statement given by plaintiff's witness, Collier, to one of defendant's claim agents, to be introduced in evidence as tending to impeach the witness. The statement was exhibited to the witness and he was asked if his signature was not at the bottom of it, and he replied that it was. The record does not show that the witness was permitted to see anything more than his signature. The witness was not permitted to read the statement although plaintiff's attorney requested that he (the witness) be given the statement and permitted to read it to see if the statement was the same statement that the witness had given without change or alteration. Under such circumstances the statement

was not admissible in evidence. [Batsch v. United Rys. Co., 143 Mo. App. 58, 71; State v. Stein, 79 Mo. 330, 332, 333; Gregory v. Cheatham, 36 Mo. 155, 161; Prewitt v. Martin, 59 Mo. 325; 334; Spoonemore v. Cables, 66 Mo. 579; State v. Grant, 79 Mo. 113, 132; State v. Matthews, 88 Mo. 121, 125.]

The judgment is affirmed. All concur.