RICHARD P. ROWE, RESPONDENT, v. KANSAS CITY PUBLIC SERVICE COMPANY, APPELLANT.—248 S. W. 2d 445.

Kansas City Court of Appeals. Opinion delivered February 4, 1952.

*Charles L. Carr, Hale Houts, Hogsett, Trippe, Depping, Houts & James,* for appellant.

1228

*Ben W. Swofford, Robert A. Schroeder, Laurence R. Smith, Swofford, Schroeder & Shankland,* for respondent.

SPERRY, C.—Plaintiff, a member of the Police Department of Kansas City, Missouri, sued defendant for personal injuries he received in a collision between a police car driven by plaintiff and a trolley bus, operated by defendant. The cause was submitted on both primary and humanitarian negligence. Judgment was for plaintiff in the amount of $4000, and defendant appeals.

The collision occurred at the intersection of Truman Road and the Paseo, in Kansas City. Plaintiff, who was officially on duty, was operating a Ford automobile and was charged with the duty of investigating and aiding at scenes of accidents. He was proceeding eastward on Linwood, at about 11:30 p.m., and received emergency orders, by radio, to proceed to 1225 Holmes to investigate an accident. He turned north on Paseo proceeding, with the siren continuously sounding and the red light on, until the automobile was struck by a trolley bus traveling eastward, in about the center of the intersection of Truman Road and the northbound traffic lane of Paseo. The left front of the bus, struck the autmobile at the rear left wheel and fender.

Defendant contends that plaintiff failed to make a submissible case on either of the above theories. (It is urged that plaintiff was guilty of contributory negligence as a matter of law, barring him from recovery on any theory of primary negligence, and that he failed to make a case on the humanitarian theory).

The collision occurred at about 11:30 p.m., at a very busy intersection. Several vehicles were parked where the drivers could see the accident. Some of them testified, as did several persons who were passengers on the trolley bus. We will summarize such of that testimony as is most favorable to plaintiff, for none of it conflicts with the testimony of plaintiff, or with his theory of the case, although there are some variances between plaintiff and other witnesses as to time, speed and space.

Truman Road is an east-west thoroughfare, the traveled portion of which is 76 feet wide. Paseo is a north-south trafficway, having two lanes, one for southbound and one for northbound traffic. These lanes are 30 feet wide and are separated by a parkway 126 feet wide.

Mr. McAnnich, a "Frisco" employee, was proceeding southward, in the west traffic lane of Paseo, and stopped his car at the north curb line of Truman Road, waiting change of the signal lights. The bus was then stopped at an unloading zone, on the south side of Truman Road, about 50 feet west of the west curb line of Paseo. He saw the bus start forward (east) at about the time he heard a siren and saw plaintiff's police car, about 200 feet south of Truman Road, traveling north in the east traffic lane of Paseo, with the red light on. The bus

was crossing the southbound lane when he heard and saw the car. He stated that the bus moved forward at about 15 miles per hour, neither diminishing its speed or swerving, until the collision occurred; that the police car entered the intersection on the green light, traveling at 12 or 15 miles per hour, and was struck when about in the center of the intersection of the northbound traffic lane of Paseo, and the eastbound lane of Truman Road.

Mr. Chrisman, an employee of McKesson-Robbins, was a passenger on the bus. He stated that he heard the siren of the police car while the bus was parked at the loading zone; that it continued to sound until the collision occurred; that he saw the car 15 feet south of the intersection; that the red light was on, both before and after the impact; that the bus did not diminish speed, or swerve; that when the car entered the intersection, going 10 or 12 miles per hour, the bus was 30 feet west, traveling 15 miles per hour; that the bus traveled 20 feet after the impact occurred.

Mrs. Chrisman, an employee of Blue Cross, was a passenger on the bus. She stated that she heard the siren when the bus started from the loading zone; that she heard the siren continuously until the collision occurred; that the red light was on the car after the collision; that the bus proceeded from the loading zone to the point of collision at 15 miles per hour, without stopping, slowing, or swerving.

Mr. Malino, a taxi driver, stated that the police car passed his taxi traveling north near 16th Street, on Paseo, traveling 25 miles per hour; that its speed was less than 25 miles per hour, when it entered the intersection; that the siren was sounding and the red light was on; that all traffic (except the car and bus) was stopped; that he thought the police car entered the intersection on the green light; that the bus was 15 feet west of the intersection when the car entered it. On cross-examination he admitted having signed a statement wherein the facts stated varied from those given in testimony.

Mr. Brown, an employee of Sheffield Steel Company, had stopped his car on the east side of the southbound traffic lane, and was waiting for a green light when he heard the siren and saw the police car with red lights on, 200 to 300 feet south of Truman Road. He stated that traffic stopped; that the car and the bus were the only vehicles moving; that the bus started through the intersection at 15 miles per hour, and did not slow down or swerve prior to the collision; that the police car entered the intersection on the green light; that the bus was, at that time, 15 or 20 feet west of the west line of the northbound traffic lane on Paseo.

Plaintiff stated that he was in charge of safety cars of the Police Department; that he had received an emergency radio message from the department to proceed to 1225 Holmes to investigate an accident; that he proceeded north on Paseo, with the siren sounding continuously and with the red light on; that as he approached Truman Road he saw

the bus standing at the southwest corner of the intersection of Truman Road and Paseo, that he was, at that time, 200 feet south; that when he next saw the bus it was 60 feet west of the east traffic lane while the car was 25 to 30 feet south of Truman Road; that when his car entered the intersection the bus was 30 feet west of the west line of the east lane of Paseo, and was proceeding at a speed of 15 miles per hour; that plaintiff, driving at 10 miles per hour, could have stopped within 27 to 28 feet, including reaction time; that he could have stopped before entering the intersection if it had been necessary, but thought the bus would stop; that he was watching other vehicles as well as the bus.

Mr. Harris, testifying as an expert for plaintiff, stated that defendant's bus, while traveling at a speed of 15 miles per hour, could have been stopped, with safety, within 26 feet.

Mr. Draffen, defendant's bus operator, stated that the bus was at a loading zone, 50 feet west of Paseo, when the green light came on for him; that the bus started and moved forward at 15 miles per hour; that he did not hear the siren, or see the car, until it was 10 feet south of Truman Road; that, at that time, the red light was not on, nor was the siren being sounded; that the bus was proceeding at 15 miles per hour and the car at 15 to 20; that a "good stop" for the bus would have been 35 to 40 feet; that he put on the brakes and was going about 5 miles per hour at the time of the impact. He admitted that he testified, by deposition, that he could have stopped the bus within 30 feet, while traveling at a speed of 15 miles per hour.

Plaintiff pleaded and relied on an ordinance of Kansas City by which defendant's operator was required to bring the bus to a stop, clear of intersection, upon the approach of an emergency vehicle, such as a police car, giving audible signal by siren. Failure to comply with the terms of the ordinances constitutes negligence *per se*. Raymore v. Kansas City Public Service Company, 141 S.W. 2d, 103, 108.

Defendant says that a violation of the emergency vehicle ordinance would constitute primary negligence to which the contributory negligence of plaintiff was a complete defense. Such is the law. Frandeka v. St. Louis Public Service Company, 234 S.W. 2d, 540, 547. However, we think the evidence here, unlike that in the above cited case, does not permit us to hold that plaintiff was guilty of contributory negligence as a matter of law.

It was the duty of defendant's bus operator to yield to plaintiff the right of way; and plaintiff was justified in relying upon the operator observing the ordinance, unless he could have seen, in the exercise of ordinary care that, obviously, the bus operator did not intend to yield. Frandeka v. St. Louis Public Service Company, supra; Raymore v. Kansas City Public Service Company, supra, 107. Plaintiff, when he entered the intersection, was watching other traffic, as well as the bus. The bus was then 30 feet west of the west line of the east lane of Paseo, and was traveling at a speed of 15 miles per hour. According to Mr.

Draffen's testimony, given on deposition, and the expert testimony as well, it could have been brought to a stop within that distance. We cannot say that plaintiff had no right to expect the bus operator to comply with the emergency vehicle ordinance when there was ample opportunity for defendant to stop the bus clear of the intersection, at the speed it was traveling and within the distance between it and the intersection. Plaintiff had the green light, as well as the right of way, under the emergency vehicle ordinance. He was traveling at a speed of 10 to 15 miles per hour, not 50 or 55, as in the Frandeka case. See Duffy v. Kansas City Railways Company, 217 S.W. 2d, 883, 885, for a discussion of the rights and liabilities of the driver of an emergency vehicle. Plaintiff was in the intersection and the bus was 30 feet west of the intersection, while in the Frandeka case the bus occupied the intersection before the police car entered. Under all of the evidence we think reasonable minds may at least differ as to whether plaintiff was negligent in proceeding into the intersection as he did, and that is the test to be applied here. Mockowik v. Kansas City, St. Joseph & Council Bluffs R.R. Company, 196 Mo. 550, 567. The latter case is relied on by appellant as authority for holding that plaintiff was guilty of contributory negligence as a matter of law. The law there is good law; but the facts in the two cases are quite dissimilar. We cannot hold that plaintiff's own testimony convicts him of contributory negligence, nor that the evidence, on the whole does so, as a matter of law. Defendant submitted the issue of contributory negligence and the jury rejected its contention.

Nor can we hold that a submissible case was not made under the humanitarian theory. Defendant urges that it does not appear that the bus could have been stopped, swerved or slowed so as to prevent the accident after plaintiff got into a position of peril. From the evidence, the jury could have believed that the bus was 30 feet west of the intersection of Truman Road and the east lane of Paseo, when the car entered it, at which time plaintiff became imperiled; that defendant's operator then saw, or could have seen plaintiff in a position of peril; and that the bus could have been slowed, swerved, or stopped without damage to person or property, in time thereafter to have averted the collision. The bus was 30 feet west of the east lane of Paseo when the car entered that intersection according to evidence most favorable to plaintiff. The east lane of Paseo is 30 feet wide. The collision occurred in the *center* of that intersection, which would be some 10 feet east of the west line of the east lane of Paseo, as extended, and plaintiff stated that, before entering the intersection, he was traveling 4 or 5 feet east of the west line of the east lane of Paseo. The bus could have been stopped within 26 feet. A submissible humanitarian case was made. Banks v. Morris & Company, 302 Mo. 254, 269 S.W. 482.

However, it is urged that, in considering the humanitarian theory as applied to this case, the emergency vehicle ordinance plays no part,

and that plaintiff admitted that when he was 25 feet south of Truman Road he could have stopped within 27 or 28 feet, before being struck, if he had thought it necessary. He stated that he relied on the bus operator observing the ordinance. Plaintiff also stated that he was watching traffic from every direction. His testimony was to the effect that he last saw the bus, as he entered the intersection, when it was at a point from 30 to 40 feet west of him. At that time he was in danger if the bus failed to slacken speed, swerve or stop, because plaintiff could not stop short of 27 feet; but plaintiff did not consider himself to be in danger for he relied on defendant's operator obeying the ordinance. Whether or not his conduct constitutes negligence so as to preclude recovery on primary negligence, is of no importance in a humanitarian case. He testified to the effect that he was watching traffic that was stopped, and did not see the bus thereafter. From and after plaintiff entered the intersection he was in inescapable peril and oblivious thereof. There is evidence from which the jury could have found that defendant's operator could have discovered the situation and, with the means at hand, could have averted the crash.

Plaintiff submitted his case on primary negligence under instructions 1 and 2; and he submitted his case under the humanitarian theory under instruction 3. Many errors are urged in the instructions submitting primary negligence which we will hereafter consider. We think the humanitarian theory was properly submitted, under instruction 3.

That instruction submitted negligence based on failure to stop or slacken speed. Such a submission was erroneous unless there was substantial evidence to support both theories. Johnson v. St. Louis Public Service Company, 237 S.W. 2d, 136, 140, 141. It is contended there was not substantial evidence to support either theory.

This case, unlike the Frandeka case, supra, is an "almost escaping" case. The left front of the bus struck the left rear wheel and fender of the automobile. From the evidence the jury could have found that defendant's operator could have stopped the bus and could, thereby, have averted the collision. The jury could also have found that the speed of the bus could have been slackened sufficiently to have permitted the car to pass beyond the overhang of the bus in safety. If, as we have here stated, there was sufficient time, according to substantial evidence, for the bus to have been stopped, then there was sufficient time and space within which its speed could have been slackened so as to permit the car to proceed some 4 or 5 feet further before the bus reached the point it had reached at the time of the collision. Johnson v. St. Louis Public Service Company, supra, l.c. 141.

Instruction 1 reads as follows:

"The Court instructs the jury that under the city ordinances of Kansas City, Missouri, introduced into evidence it is provided that upon the approach from any direction of an authorized

emergency police vehicle giving audible signal by horn, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right-hand edge or curb of the roadway clear of any intersection, and shall stop and remain in such position until such authorized police emergency vehicle shall have passed.

"The Court, therefore, instructs you that if you find and believe from the evidence that at the time and place mentioned in evidence the plaintiff was driving an authorized police emergency vehicle in a northerly direction on the east drive of the Paseo, if you so find, and that while approaching 15th Street audible signal was being given by siren from said vehicle, if you so find; and if you further find and believe from the evidence that at the time and place mentioned in evidence the defendant through its agent, servant and employee was operating an electric trolley bus in an easterly direction on 15th Street at or near the intersection of 15th street and the east drive of The Paseo, if you so find; and if you further find and believe from the evidence that said authorized police emergency vehicle operated by the plaintiff and said electric trolley bus collided at said intersection, if so, and if you further find and believe from the evidence that the operator of said trolley bus knew or by the exercise of ordinary care could have known that said police vehicle operated by the plaintiff was approaching the intersection of 15th Street and the east drive of The Paseo, if so, and that the operator by the exercise of ordinary care and with safety to himself, said electric trolley bus and the passengers thereon, and by the use of the means at hand, could have stopped the said trolley bus parallel to and near the right hand or south edge of 15th Street and clear of the intersection, and have avoided the collision, if you so find, you are instructed that it was the duty of said defendant's operator to do so, and his failure to do so (if you find he did so fail) constitutes negligence; and if you further find and believe from the evidence that said operator of the trolley bus was thus negligent and that as a direct result, if so, of said negligence, if any, the collision occurred and plaintiff was injured, if so; and if you further find and believe from the evidence that plaintiff was at all times herein mentioned exercising the highest degree of care for his own safety, then your verdict should be for the plaintiff, Richard Rowe, and against the defendant, Kansas City Public Service Company."

The instruction is criticized because it does not require the jury to find that plaintiff was operating the police car "in an emergency in the necessary performance of police duties." The applicable portion of the emergency vehicle ordinance provides as follows:

"31-8 (Revised Ordinances Kansas City, Missouri, 1946).

* * * Upon the approach from any direction of any au-

thorized emergency vehicle or vehicles giving audible signal by horn, siren or exhaust whistle, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right hand edge or curb of the street, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle or vehicles shall have passed, unless otherwise directed by a police officer; and the operator of every street car shall immediately stop such car clear of any intersection and keep it in such position until the authorized emergency vehicle or vehicles shall have passed, unless otherwise directed by a police officer."

It is not required, by that section, that plaintiff prove that he was operating a police car "in an emergency in the necessary performance of public duties."

Under the provisions of Section 31-7, of the Emergency Vehicle Ordinance, it is provided as follows:

"(1) Exemption from provisions of chapter.—The provisions of this chapter regulating the movement, parking and standing of vehicles shall not apply to authorized emergency vehicles, as defined in this chapter, while the driver of such vehicle is operating the same in an emergency in the necessary performance of public duties. This exemption shall not, however, protect the driver of any such vehicle from the consequences of a reckless disregard of the safety of others." The Charter Administrative Code and Revised Ordinances of Kansas City, Missouri, Revision of 1946.

There was substantial evidence tending to prove that plaintiff entered the intersection at a speed of 10 to 15 miles per hour, and on the green light. If that testimony be accepted as true, then if plaintiff had been a private citizen, driving a private automobile, instead of a police officer driving an emergency vehicle, he would have been in the observance of the letter of the law. Defendant seeks to apply to plaintiff a clause in a section of the ordinance which prescribes what the driver of an emergency vehicle shall or shall not do upon the approach of another driver of an emergency vehicle. Such a situation is not here involved.

Furthermore, there was ample evidence tending to prove that the police car was being operated officially as an emergency vehicle and was, when the collision occurred, being driven to the scene of an accident which the operator was required to investigate; and there was no evidence to the contrary. No issue was presented on this point. Hackleman v. Kansas City Rts. Company, 217 S.W. 618, 619; King v. Rieth, 341 Mo. 108 S.W. 2d, 1, 7; Allen v. Purvis, 30 S.W. 2d, 196, 200.

The instruction is further criticised because the jury was not required to find "that defendant's operator *heard* or by the exercise of ordinary care could have *heard* the siren of the police car." The in-

struction required the jury to find "that the operator of said trolley bus knew or by the exercise of ordinary care could have known that *said* police vehicle operated by the plaintiff (with siren sounding) was approaching the intersection * * *." The jury was thereby required to find that the police car, with siren sounding, was approaching the intersection. Defendant's contention is rejected.

It is also contended that error was committed because of failure to require the jury to find that the bus operator could have complied with the ordinance (bring the bus to a stop clear of the intersection) after he knew or should have known of the approach of the car, and *heard or should have heard the siren.* The instruction, we think, is clear enough on that point, and the jury could not have been confused or misled. If he knew or could have known that a police car (with siren sounding) was approaching he knew or could have known that the siren was sounding. He knew it by having heard it.

It is next urged that: "Instruction 2 erroneously told the jury that plaintiff had a right to rely upon observance of the emergency vehicle ordinance by defendant's operator," although there was evidence to the contrary. It is argued, on authority of the Frandeka case, supra, that plaintiff "had no right, in the exercise of due care for his own safety, to assume that the driver of defendant's bus would yield the right of way to him when the obvious circumstances indicated that the bus driver did not intend to do so." It is contended that the instruction should have contained a provision modifying it in this respect.

This instruction is similar to one suggested in 1 Raymond on Instructions, Sec. 1183, taken from Duffy v. Kansas City Rys. Company, 217 S. W. 883. A verdict is not directed by the instruction and it is a correct declaration of the law as far as it goes. If it is defective, it is only so for non-direction, not misdirection, and it is not reversibly erroneous. Keyes v. C. B. & Q. R. Co., 31 S. W. 2d, 50, 63. The instruction must be read in connection with instruction 1, and also with defendant's instructions 6 and 7, which instructions covered the defense of contributory negligence. Under all of the instructions we think that the jury could not have been misled or confused by reason of its failure to specifically mention the evidence, if any, tending to prove that it was obvious to plaintiff that the bus would not stop.

The instruction is also criticised because it does not require the jury to find that "plaintiff's car was giving audible signals by horn, siren, or exhaust whistle and that the car was being operated in an emergency in the necessary performance of public duties." We have discussed this contention as related to instruction 1, and further discussion here would be repetitious. The point is ruled against defendant.

It is further criticised as being abstract in respect to any duty owed by the bus operator, under the ordinance, and as being a roving

commission. The instruction is not reversibly erroneous on this ground. The judgment should be affirmed. *Bour, C.*, concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.