James L. McDONALD, Plaintiff-Appellant,

v.

Frank C. PLAS, Defendant-Respondent.

No. 24233.

Kansas City Court of Appeals.

Missouri.

Feb. 21, 1966.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 4, 1966.

Robert A. Meyers and George C. Denney, Kansas City, for appellant.

Norman O. Sanders, Fred J. Freel, Sheridan, Sanders, Peters & Carr, Kansas City, for respondent.

BLAIR, Judge.

James L. McDonald brought suit against Frank C. Plas for $10,000.00 for personal injuries he claimed he suffered as a result of a collision between the ambulance he was operating and an automobile operated by Plas. A trial before the court and jury resulted in a verdict and judgment against McDonald and he appeals.

The collision occurred in the intersection of Brookside Boulevard and 59th Street in Kansas City. Brookside runs north and south and 59th runs east and west. Traffic is controlled at the intersection by colored electric signal lights, green indicating permission to vehicles to proceed through the intersection and red requiring them to stop until the red signal light turns green. When the lights are green for east and west traffic on 59th, they are red for north and south traffic on Brookside and vice-versa.

On October 15, 1962 about 6 P.M. McDonald was operating an ambulance and traveling south on Brookside approaching 59th. Plas was operating his automobile and traveling east on 59th approaching Brookside. The ambulance admittedly was answering an emergency call. It was equipped with the statutory siren and red light. Sec. 304.022 V.A.M.S. McDonald received the emergency call at a time when he was many blocks from the intersection. He turned the siren and light on at once and set out to answer the call. This equipment operated continuously until the ambulance and automobile collided in the intersection. Plas drove into the intersection with a favorable green light facing him. McDonald drove into it with a forbidding red light facing him.

It is not questioned that McDonald was authorized to drive his ambulance through the red signal light if he observed the measure of care for the safety of others required of him in the circumstances. Nor is it questioned that Plas failed to yield the right-of-way to McDonald as required by Section 304.022, subd. 1, as follows: "Upon the immediate approach of an emergency vehicle giving audible signal by siren or while having at least one lighted lamp exhibiting red light visible under normal atmospheric conditions from a distance of five hundred feet to the front of such vehicle, the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as far as possible to the right of the traveled portion of the highway and thereupon stop and remain in such position until such emergency vehicle has passed, except when otherwise directed by a police or traffic officer."

McDonald submitted his claim to the jury by a single verdict-directing instruction grounded on the theory that Plas caused the collision and his injury by failing to yield the right-of-way as required by Section 304.022, subd. 1. In substance it told the jury that if it found that McDonald was operating an emergency ambulance, in the exercise of the highest degree of care, and that as he approached the intersection his siren was "sounding and audible" and that Plas actually heard or, by the exercise of the highest degree of care, could have heard, the siren sounding in time thereafter to have stopped his automobile and yielded

the right-of-way, and that he negligently failed to do so and thereby collided with the ambulance and caused McDonald's injuries, then McDonald was entitled to a verdict, unless he was guilty of contributory negligence.

■ McDonald challenges the propriety of two contributory negligence instructions Numbered 4 and 5 given for Plas by the court. There is no challenge in McDonald's original brief to the sufficiency of the evidence to support these instructions, except this statement in the brief's "Conclusion": "Instruction No. 5 ignored and omitted plaintiff's right of way as an emergency vehicle which plaintiff retained unless there be evidence not here present, that he knew or should have known that the defendant would not yield." Plas says in his "Statement of Facts" in his responding brief: "Since no question has been raised in this appeal regarding the sufficiency of the evidence, respondent will not elaborate upon appellant's abbreviated statement of the facts." McDonald filed a reply brief in which there is no mention of the sufficiency of the evidence. In his "Points Relied On" and his "Argument" in his original brief McDonald deals with these two instructions entirely on the theory that they are misstatements of the law and not on any theory that the evidence was insufficient to support giving them to the jury. McDonald's terse and unexplained statement in the "Conclusion" of his brief that evidence necessary to support Instruction No. 5 is "not here present" is wholly insufficient to present that question to this court for review. V.A.M.R. Civil Rule 83.-05; Lewis v. Watkins, Mo.App., 297 S.W.2d 595, 597; Whitehead v. Schrick, Mo.App., 328 S.W.2d 170, 179; Clemons v. Becker, Mo., 283 S.W.2d 449, 451-452; Vol. 3, Mo.Digest, Appeal and Error, ☞761. We will assume these instructions were supported by substantial evidence.

■ "We are mindful that under the terms of Civil Rule 83.24 it is our duty to construe all rules of civil procedure liberally so as to promote justice, to minimize the number of cases disposed of on procedural questions and, generally, to determine cases on their merits. We have adhered to that policy and have in numerous instances overlooked violations of Rule 83.05 when the interests of justice so required. However, this court would be derelict in its judicial duty if it did not insist upon at least substantial compliance with the rules governing appellate procedure. See Ambrose v. M. F. A. Co-Operative Association of St. Elizabeth, Mo. Sup., 266 S.W.2d 647; Weinbrenner v. McCall, Mo.App., 336 S.W.2d 532. The burdens that result from imperfect appeals fall upon responding parties as well as upon reviewing courts. When appellants fail to state facts and define issues as the rules prescribe, respondents are deprived of their just entitlement—a full opportunity to know and answer the precise questions in controversy." Walker Brothers, Inc. v. J. K. Seear (U.S.A.) Ltd. et al., Mo.App., 364 S.W.2d 51, 52.

Contributory negligence Instruction No. 5, given for Plas, reads as follows: "The Court instructs the jury that the plaintiff was under an obligation to exercise the highest degree of care and to keep a lookout for the approach of other vehicles at the intersection of Brookside Boulevard with 59th Street, accordingly, if you find and believe from the evidence that the plaintiff failed to exercise the highest degree of care in keeping a lookout for the approach of the automobile operated by the defendant, and if you further find that such failure on the part of plaintiff, was negligence, if you so find, and if you further find that said negligence on the part of plaintiff, if any, directly and proximately contributed to cause the collision mentioned in evidence, then you are instructed that you must return your verdict in favor of defendant even though you may find that he was also negligent in the operation of his said automobile."

Concerning this instruction McDonald's "Point Relied On" argues: "Instruction

No. 5 directs a verdict against the plaintiff if plaintiff 'failed to exercise the highest degree of care in keeping a lookout for the approach of the automobile operated by defendant' and was thereby negligent. This was error because it placed upon plaintiff the absolute duty of looking and seeing all that was possible to see when under the law the plaintiff was justified in assuming that the defendant would observe the statute and yield the right of way until plaintiff knew or in the exercise of ordinary care should have known that defendant obviously did not intend to yield the right of way."

McDonald argues that while operating an emergency vehicle and answering an emergency he was justified in assuming that Plas would observe Sec. 304.022, subd. 1, supra, and yield the right-of-way until he knew or, in the exercise of *ordinary* care, should have known Plas obviously did not intend to do so. He cites Frandeka v. St. Louis Public Service Co., Mo., Div. 1, 1950, 234 S.W.2d 540, 541, 545; Rowe v. Kansas City Public Service Co., K.C.App., 1952, 241 Mo.App. 1225, 248 S.W.2d 445, 449; and Allman v. Yoder, Mo., Div. 2, 1959, 325 S.W.2d 472, 477–478. These decisions all ruled that the driver of an emergency vehicle answering an emergency was required to exercise only ordinary care. The later decision in Ficken v. Hopkins, Mo., Div. 2, 1965, 389 S.W.2d 193, 199, overrules Allman without mentioning Frandeka or Rowe, saying: "As previously noted, Section 304.010 requires that 'Every person operating a motor vehicle on the highways of this state * * * shall exercise the highest degree of care, * * *,' and neither it nor Section 304.022, pertaining to emergency vehicles makes any exception. In other words, the driver of an emergency vehicle authorized by par. 4(2) of Section 304.022 to do the things therein provided without constituting a violation of what are known as the rules of the road, when doing them, must exercise the highest degree of care, which is such care as a

very careful and prudent person would ordinarily use under the same or similar circumstances. For this reason the statement in Allman v. Yoder, Mo., 325 S.W.2d 472, relied on by Goetz and Eickhoff which indicates that ordinary care only is required in some situations does not correctly state the degree of care required by the statute." Neither McDonald nor Plas has cited Ficken. Obviously the decisions of Divisions 1 and 2 of the Supreme Court prescribing the degree of care required of the driver of an emergency vehicle are in irreconcilable conflict. Even if Frandeka, Rowe and Allman could be considered as still in force, and Ficken had not been adjudged, these three decisions on which McDonald relies would be of no assistance to him in this case.

■ For by his own verdict-directing instruction he required the jury to find "that plaintiff was exercising the highest degree of care" at all pertinent times. By voluntarily submitting "the highest degree of care" as the standard of his own duty, he lost the right to complain that this contributory negligence instruction also required him to exercise the highest degree of care. "When plaintiffs elected to try their case on the theory of negligence and adopted a degree of care for which they sought to hold defendant liable, such theory and practice should prevail throughout the case and defendant should not be denied the privilege of meeting the issue so made and presenting the case to the jury accordingly." Owen v. Chicago Great Western R. Co., Mo.App., 47 S.W.2d 195, 197. A party cannot complain of an error in an instruction of the opposite party which is common to the instructions of both parties. Bowles v. Eisenmayer, Mo.App., 22 S.W.2d 884, 885; Carey v. Crawford Electric Cooperative, Inc., Mo., 347 S.W.2d 184, 190; Crews v. Kansas City Public Service Co., 341 Mo. 1090, 111 S.W.2d 54, 57. The decisions supporting this ruling are so familiar and numerous that no further citation is neces-

sary, except Vol. 3, Mo.Digest, Appeal and Error, ▮▮▮ Vol. 27, Mo. Digest, Trial, ☞272.

McDonald argues that Instruction No. 5 is erroneous because it omits to tell the jury that he was justified in assuming that Plas would observe the statute and yield the right-of-way until he (McDonald) knew, or in the exercise of ordinary care, should have known that Plas obviously did not intend to do so. We have demonstrated that on this record this instruction was not erroneous because it required McDonald to exercise the highest degree of care. We next consider whether the instruction was erroneous for failing to advise the jury that he had the right to assume that Plas would obey the statute and yield the right-of-way until he (McDonald) knew or, in the exercise of the standard of care governing this particular case, should have known that Plas did not intend to do so. Instruction No. 5 is a conventional one, frequently given and consistently approved. In the decisions it has met many objections, one of which is the objection now raised against it. In Boehm v. St. Louis Public Service Company, Mo., 368 S.W.2d 361, 367, an instruction analogous to this one in all legal respects was given. The court said: "Company's objection is that this authorized the jury to find against Company for failing to take evasive action upon the mere appearance of the motor scooter, even before there was any probability or likelihood of danger of collision; that Company had no duty to take preventive action until there was apparent danger of a collision, which basic fact the jury was not required to find. In support of this theory Company cites Stakelback v. Neff, Mo.App., 13 S.W.2d 575; Nydegger v. Mason, Mo.Sup., 315 S.W.2d 816; Burke v. Renick, Mo.App., 249 S.W.2d 513; Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111, and Rosenkoetter v. Fleer, Mo.Sup., 155 S.W. 2d 157. The same point was raised and the same cases cited in Moore v. Ready Mixed Concrete Co., Mo.Sup., 329 S.W.2d 14, which also involved a 'lookout' instruction.

We pointed out that these cases, involving the precautionary duty to slacken, stop or swerve, are inapplicable where the negligence involved is the failure to keep a lookout; that in a 'lookout' instruction it is not essential to hypothesize the exact manner and means in and by which defendant could have avoided the collision so long as there is substantial evidence that he had the means and ability to have so acted that a collision would have been avoided; *that plaintiff is not required in a lookout instruction to insert a finding that the duty to act was dependent on the fact of apparent danger of collision; that in this type of submission (lookout) 'it is generally considered sufficient to hypothesize failure to keep a lookout and require a finding that such failure was negligence and directly caused the collision.'* 329 S.W.2d l. c. 25 [9, 10]. See also Horrell v. St. Louis Public Service Co., Mo. Sup., 277 S.W.2d 612, 615 [5], and Anthony v. Morrow, Mo.App., 306 S.W.2d 581, 588 [8]."

In Whaley v. Zervas, Mo., 367 S.W.2d 611, 614, an instruction identical with Instruction No. 5 was challenged on the same ground and approved by the Supreme Court which ended its ruling saying: "It is sufficient (under the facts in this case) if it requires a finding of failure to keep a lookout and that such failure was negligence which was a proximate cause of the casualty. The essential fact situation was hypothesized therein, but if plaintiff thought that additional facts should have been included in the hypothesis he should have offered an amplifying instruction." We notice that the court in Whaley restricted its ruling to the facts and circumstances of that case. Nothing has been presented to us, and we see nothing, differentiating the facts and circumstances in Whaley from those in this case.

▮▮▮ If McDonald desired to inform the jury that his "duty to act was dependent on the fact of apparent danger of collision" and that he was entitled to assume that

Plas would obey the statute and yield the right-of-way until he (McDonald) knew or, in the exercise of the standard of care governing this particular case, should have known that Plas did not intend to do so, then he should have formulated and requested an amplifying instruction so advising the jury. He failed to present such an amplifying instruction and his failure deprives him now of all right of complaint on this ground. The rule is a familiar one that where an instruction is sufficient in scope and legally correct, a party who fears the generality of the instruction may be misleading to the jury must prepare and request an amplifying instruction embodying his views or he will not be heard to complain. Trusty on Constructing and Reviewing Instructions, Section 26, p. 123; Raymond Missouri Instructions, Vol. 1, Section 41, and decisions cited; Boedeker v. Wright, Mo., 312 S.W.2d 829, 837; Norvell v. Schupbach, Mo.App., 185 S.W. 323, 326; Lampe v. United Rys. Co. of St. Louis, 177 Mo.App. 652, 160 S.W. 899, 901; State ex rel. Rothenheber v. Allen, Mo., 270 S.W. 633, 634; Vol. 2A Mo. Digest, Appeal and Error, Vol. 27 Mo. Digest, Trial, ☞256(2).

 McDonald contends that Instruction No. 5 required of him the absolute duty to discover the presence of the Plas automobile at the earliest possible time and to anticipate that Plas would not yield the right-of-way as required by Section 304.022, subd. 1. He cites Welcome v. Braun, Mo., 319 S.W.2d 586, 588. The Welcome case was explained and distinguished in Boehm v. St. Louis Public Service Company, Mo., 368 S.W.2d 1. c. 366. In Boehm the appellant complained of a contributory negligence instruction that was as general as the one before us, saying that it placed an absolute duty on the defendant company to have "seen or discovered" the presence of the vehicle in which the plaintiff was riding as a passenger. "In support of this theory, Company cites Welcome v. Braun, Mo.Sup., 319 S.W.2d 586, in which an instruction was condemned for barring re-

covery on the ground of contributory negligence if plaintiff *could* have seen defendant's car, *could* have realized that there was danger of collision, and *could* have stopped, thus placing upon plaintiff an absolute duty, and not merely requiring plaintiff to exercise the highest degree of care in seeing, realizing and endeavoring to stop. The two instructions are not analogous. In Welcome v. Braun, the instruction totally failed to limit the lookout duty to the exercise of the highest degree of care, whereas in the instant [case] the jury was instructed that Company 'owed the duty to exercise the highest degree of care to keep and maintain a * * * lookout * * so as to see, discover, be cognizant * * *.' The duty was expressly stated as a relative duty, qualified by the requirement of the exercise of the proper degree of care. 'It seems to us to lay down the proper rule, i. e., that defendant was under a duty to use the highest degree of care to see and discover the presence of other vehicles, and does not place an absolute duty upon defendant so to do.' Nelson v. St. Louis Public Service Co., supra, [Mo.App.,] 360 S.W.2d [356] 1. c. 360 [2]." Obviously, Instruction No. 5 is not analogous to the instruction ruled on in Welcome or open to the complaint made there or here. For Instruction No. 5 embraces the requirement that McDonald exercise the highest degree of care, the very degree of care he placed on himself in his own verdict-directing Instruction No. 1. There is no merit in any of the complaints made against Instruction No. 5.

Contributory negligence Instruction No. 4 given for Plas by the court told the jury that if it found that McDonald drove the ambulance into the intersection when the electric signal light was red, and did so at a speed in excess of fifteen miles per hour, he was negligent, and that if that negligence directly contributed to cause the collision, he was not entitled to a verdict, and that this was true even though Plas was also negligent. McDonald argues this was error because "it conflicts with Sec-

tion 304.022 R.S.Mo.1959 which permits drivers of emergency vehicles to proceed past a red or stop signal or stop sign slowing down as may be necessary for safe operation."

There is no question that this statute so provides and that it does not require the driver of an emergency vehicle in all circumstances to reduce his speed to fifteen miles per hour while driving "past a red or stop signal or stop sign." It requires only that the driver shall slow down "as may be necessary for safe operation." However, this instruction was not grounded on this statute but on Section 58.180(2), (2)(a), Revised Ordinances, Kansas City, Missouri, which declares "Whenever such emergency vehicle is operated contrary to the indication of the traffic signal or stop sign, such emergency vehicle shall reduce speed as follows: (a) Vehicles of the passenger chassis type must reduce to fifteen miles per hour." Plas pleaded this ordinance as a defense in his answer. McDonald did not attack its validity by a motion to strike or by a reply. The only issue made by the pleadings, on this ordinance, was whether McDonald violated it. McGrath v. Meyers, 341 Mo. 412, 107 S.W.2d 792, 794. He waited until Plas offered the ordinance in evidence and then for the first time questioned its validity by an oral objection. As stated in his brief, the objection was: "These ordinances in question are * * * contrary to the statute of the subject and * * * are illegal for that reason." This objection was general and insufficient. " * * * [C]ounsel must put their finger on the specific provision of the Constitution and the specific law that is violated by the ordinance objected to." Hafner Mfg. Co. v. City of St. Louis, 262 Mo. 621, 172 S.W. 28, 31–32; Vol. 27 Mo. Digest, Trial, ■ (2) (3). Even if he had raised a specific oral objection, it would have availed him nothing at that late stage of the proceedings. Challenges to the validity of ordinances on the ground that they conflict with a state statute must be raised "at the first opportune moment" or they are waived. Clark v. Trilinsky, Mo. App., 170 S.W.2d 459, 461; McGrath v. Meyers, supra, 107 S.W.2d 1. c. 794.

McDonald contends that his oral objection was the only means available to him to attack the validity of the ordinance, if he followed procedure prescribed by the Civil Code, and that therefore his objection was timely and raised at the first opportune moment. He says that the ordinance was pleaded in the answer in a manner that failed to disclose its conflict with Section 304.022 and he could not successfully move to strike it on the ground of invalidity. If he is right in his complaint against the answer, he is right in saying he could not have successfully moved to strike the ordinance. We do not need to discuss the answer, for a ruling upholding his complaint against it would not settle the question with which we are dealing. Exactly in point is McGrath v. Meyers, supra, 107 S.W. 2d 1. c. 794. He next contends that he was exempted from attacking the ordinance by reply because Civil Rule 55.01 declares, as he says, that a reply is required only "if the answer contains a counterclaim denominated as such," and there was no counterclaim in this case. He cites Smyth v. City of St. Joseph, Mo.App., 297 S.W.2d 578, 580. It does not reach, much less determine, the question before us.

The determinative ruling is Frank v. Wabash Railroad Company, Mo., 295 S.W.2d 16, 21: "It is true that municipal ordinances regulating subjects, matters, and things upon which there is a general law of the state must be in harmony with the state law. * * * However, we need not determine whether the ordinance in this case is invalid. The invalidity of an ordinance in the respect relied upon by plaintiff, like the unconstitutionality of a statute, must be raised at the first opportunity, and if not so raised, its invalidity is deemed waived. * * * In Roper v. Greenspon, supra, an ordinance was pleaded in the answer. Its validity was not challenged in the reply. It was there held [272 Mo. 288, 198 S.W. (1107) 1108, (L.R.A.1918D,

126)], that the invalidity of an ordinance must be asserted 'at the first open door under the orderly procedure in the case', and that if the defense 'in its answer relies upon a pleaded ordinance, then the reply would be the first open door.' No reply was filed in this case and none was required in order to have the pleadings at issue, but a reply was permissible. In addition, if it was the position of plaintiff that the ordinance was invalid, and therefore could not properly constitute a matter of defense, a motion to strike the pleadings pertaining to the ordinance was available to defendants. * * * [W]e conclude that this issue was not properly and timely raised, and was therefore waived."

McDonald does not contend that Instruction No. 4 was erroneous for any reason other than the claimed invalidity of the ordinance. We rule that this question was not properly and timely raised and was therefore waived.

The judgment is affirmed.

All concur.