STATE OF MISSOURI at the Relation of THE UNITED TELEPHONE COMPANY, a Corporation, Appellant, v. PUBLIC SERVICE COMMISSION and J. C. COLLET, J. FRED HULL, GEORGE H. ENGLISH, WILLIAM STOECKER and W. M. ANDERSON, Members of the Public Service Commission.—81 S. W. (2d) 628.

Division One, April 17, 1935.

*Sparrow, Patterson, Chastain & Graves, Karl B. Rugh* and *Lewis H. Cook* for appellant.

862

*Sam O. Hargus,* General Counsel, and *James P. Boyd,* Assistant General Counsel, for Public Service Commission.

PER CURIAM:—This is an appeal from a judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission directing a decrease in the rates of The United Telephone Company at Clinton. The telephone exchange at Clinton is one of fifty-six similar properties owned and operated by this company, a Missouri corporation, in as many small cities and towns in Missouri.

The proceeding was originally instituted before the commission by the filing of a letter signed by the city clerk of Clinton wherein complaint was made that the rates effective at Clinton for gas, water and telephone service were excessive and request was made that the commission investigate such rates and hold hearings thereon. A similar letter was received by the commission from the Mayor of Clinton, with an attached petition signed by approximately one hundred and fifty citizens of Clinton, requesting an investigation of the rates charged for telephone service in that city.

In compliance with these requests the commission ordered an investigation of the reasonableness of this company's rates for telephone service at Clinton, and pursuant thereto caused the commission's accounting department to make a complete audit of the operating revenues and expenses of the company for its Clinton exchange for the year ending April 30, 1933, and its engineering department to make appraisal of the company's properties, the latter based upon an inventory made by the company as of November 1, 1928, priced as of June 1, 1933, with adjustment and inclusion of net additions to April 30, 1933.

Hearings were had before the commission in the rate proceeding on June 30 and 21, 1933, and on September 28, 1933, the commission made and filed its report and order (1) that the value of the property of The United Telephone Company used in service at its Clinton telephone exchange was $192,500 as of June 1, 1933; (2) that a fair return on such valuation was seven per cent; (3) that the company should set up an annual depreciation reserve account in the amount of $6,100, plus three per cent of the cost of net additions to its properties (estimated at $3154) as of June 1, 1933; and (4) that the company should make effective reduced rates which would reduce

its gross revenues (found during the year ending April 30, 1933, to be $45,178.15) by 10.44 per cent.

Thereafter, and within due time, the company filed with the commission its motion for a rehearing, which motion was overruled. Thereupon, the company applied for and obtained writ of review in the Circuit Court of Cole County. After hearing thereon judgment was rendered affirming the commission's order, from which judgment the company has appealed.

In this statement of facts counsel for appellant say that their contentions here are that "the valuation made by the Commission of $192,500 is at least $17,500 less than the fair present value of such property; that it is entitled, under the evidence and all precedent, to an annual depreciation reserve of at least 5 per cent, instead of less than 3 per cent; that it is entitled to include in its operating expense the amount of $1,941 for Federal income taxes; that it is entitled to have included in its rate base some 200 telephone instruments discontinued in service during the depression and now held by the Company in readiness for installation as soon as normal conditions require; that the Commission should have granted a rehearing in view of the conclusive proof that the Company's revenues had declined from $45,178.15 for the year ended April 30, 1933, to $43,770.91 for the year ended December 31, 1933, and that the Company's operating costs were largely increased by reason of compliance with the N. R. A. Code."

No contention is made that the rate of return of seven per cent approved by the commission is insufficient, but it is urged that the highest return that can be actually earned under the commission's order will be so much less than seven per cent that the order itself must be deemed arbitrary, unreasonable and unlawful. Counsel for appellant states its position in this respect as follows:

"The Commission determined that the Company had earned in the year ended April 30, 1933, $24,302.61 for depreciation and return. The Company is required by law to pay Federal income taxes of $1,941, reducing the above amount to $22,361. If it be allowed the fair return of 7 per cent and depreciation reserve of 5 per cent, it is entitled to earn $25,200, and no rate reduction could be justified. With allowance of 5 per cent for annual depreciation, or $10,500, the amount available for return is $11,861, or 5.6 per cent. If the Commission's rate reduction is made effective the amount available for return is reduced to $7,134, or 3.3 per cent."

This statement proceeds on the theory that the company's property should have been valued at $210,000 instead of $192,500, and the allowance for depreciation reserve fixed at five per cent of the former amount instead of the allowed amount of $6,100 plus three per cent of net additions.

The questions presented by these contentions are whether the commission proceeded in an arbitrary, unreasonable and unlawful manner in (1) arriving at the fair present value of the property, (2) in fixing the depreciation reserve, (3) in failing to include in the company's operating expenses the amount of $1,941 for Federal income taxes, and (4) in overruling the company's motion for a rehearing notwithstanding evidence of declining revenues and increased operating expenses set forth in such motion.

One who questions the reasonableness or lawfulness of the commission's order must carry the burden of proof. [State ex rel. City of St. Louis v. Public Service Commission, 47 S. W. (2d) 102, 329 Mo. 918.] The first seven points listed under appellant's points and authorities are directed at the fair present value fixed by the commission.

The first point is that "valuation based on panic prices prevailing in the early part of 1933, rather than average prices, was unlawful and unreasonable." The cases cited bear out the proposition that the rate base should not rest solely on panic prices. [Los Angeles Gas & Elec. Corp. v. Railroad Comm. of Cal., 58 Fed. (2d) 256; McCardle v. Indianapolis Water Co., 272 U. S. 400, 47 Sup. Ct. 144; Georgia Ry. & Power Co. v. Railroad Comm. of Georgia, 262 U. S. 625, 43 Sup. Ct. 680; Bluefield Waterworks & Imp. Co. v. Public Service Comm. of West Virginia, 262 U. S. 679, 43 Sup. Ct. 675; Monroe Gas Light & Fuel Co. v. Mich. P. U. Comm., 292 Fed. 139.]

It appears from the commission's report that its engineers appraised the bare cost of reproduction at $172,418, while the company's engineers appraised the same at $179,015. The appraisal of the commission's engineers was lower than that of the company's engineers on approximately every class, and counsel for appellant say that these differences existed because of the former "used in part panic prices prevailing in the early part of 1933." The only item specified is poles. From an examination of the record we are unable to discover what valuation the commission placed on poles, or what weight if any it gave to certain low prices in evidence as to this item. It is apparent, however, that on the whole the commission's valuation more nearly approached the appraisal of the company's engineers, for it was fixed in the report at $176,500.

Appellant's second point is a blanket recital of alleged reasons why the commission's finding as to the present fair value of appellant's property is in violation of certain provisions, but nowhere in the brief or argument is it suggested just where and how these violations occur. The point is rested upon the bare statement without any attempt at elaboration or proof, and we leave it so.

Likewise, appellant's third point that the "Commission failed and refused to give consideration to the evidence offered by the Com-

pany as to the investment in its property" stands without any supporting suggestions, and we pass it by.

The fourth point is that the "Commission in its findings and order failed to make an adequate allowance for general or construction overheads." The commission's engineers arrived at an overall percentage of 12.09 per cent for the cost of reproduction and 12.50 per cent for the cost of reproduction less depreciation by a consideration of the items of property as segregated by the various accounts. The percentage for the different accounts varied so that the final overall percentages were as above stated. The company's engineer, however, simply added 15 per cent to the bare cost of the property, exclusive of land, for general overheads, as follows:

| | |
|---|---:|
| Engineering and Supervision, including Salaries of Officers and Clerks | 5% |
| Organization, Legal, Administration and Miscellaneous Expense | 3% |
| Taxes and Interest during Construction | 3.5% |
| Contingencies and Handling materials in Warehouse, breakage and loss, training employees and omissions in appraisal | 3.5% |
| Total | 15.0% |

·In support of their contention that the allowance of 12.5 by the commission was inadequate counsel for appellant merely cite twenty or more cases in which the percentage allowed for overheads ranged from 13.5 per cent to 20 per cent. Without careful analysis and consideration of the evidence in each case such citations are of little assistance. The commission's engineers developed their overall percentages by the more meticulous method of considering the items of property as segregated by the various accounts and we cannot say the commission's allowance of 12.5 per cent is not supported by substantial evidence.

Appellant's fifth point is that the commission's refusal to include some two hundred telephone instruments, which had been taken out of service because of loss of subscribers during the depression, in the materials and supplies account. Twenty-six unused telephones of this number were allowed as a reasonable surplus on hand to meet future demands. This number is comparable to the surplus which the evidence shows was normally carried. There appears to be no substantial evidence as to when, if ever, the other required phones will be called into service. Indeed, affidavits filed by the company in connection with its motion for a rehearing before the commission indicate a further falling off in revenues.

Counsel for appellant next complain of the commission's adoption of the recommendation of its engineers that the company's property was in eighty-three per cent condition, "although the inspection of

the property by such engineers was shown to be incomplete and inefficient." The company's engineer found such condition as approximately eighty-seven per cent. It was for the commission to determine the thoroughness and sufficiency of the several inspections.

Appellant's seventh point is that there was "no consideration by the Commission of the original cost of the Company's property." It is conceded that there was no evidence in the case as to the original cost of the property. If such was obtainable the company was presumably in better position than anyone else to produce it and not having done so it will not now be heard to complain of such lack.

Appellant's eighth point is that the "Commission's action in reducing annual depreciation requirement from 5 per cent to 3 per cent was grossly unfair and discriminatory." The amount fixed by the commission to meet this requirement was $6,100 per year, which is a little more than three per cent of the cost of reproduction of the property ascertained by the commission. It is vigorously urged in appellant's behalf that in so doing the commission "reduced the standard or usual measure of annual depreciation," citing a rate allowed in other cases of five per cent as the criterion, and the question is argued pro and con in the briefs on the basis of what has been allowed in other cases without suggesting analogous facts. As heretofore intimated, this manner of presentation affords little assistance from either side to the reviewing court. An analysis of the facts in evidence, if any, in the light of the utility's reasonably demonstrated depreciation needs would be much more helpful. The difficulty here seems to be largely a difference of opinion as to the real nature and function of depreciation reserve. From a study of the evidence we conclude that the amount fixed by the commission is supported by substantial evidence and is not unreasonable or unlawful.

The ninth and last point urged in appellant's brief is that "the Commission's action in refusing to allow the inclusion of Federal income taxes as operating expenses was error." The undisputed evidence is that the company did not pay income taxes. We are not aware of any authority holding that in such case an allowance of this kind should be made, and counsel for appellant cite none.

In connection with motion for rehearing by the commission, counsel for the company filed exhibits showing continued decrease in gross revenues and increase in operating expenses. These matters are referred to in points 10 and 11 of appellant's brief filed here but are not further amplified, argued or stressed on this submission. If subsequent experience has demonstrated the permanency of such trends the company may yet have relief at the hands of the commission, but in view of the showing made we do not think the commission abused its discretion in overruling the motion.

Finding no errors in the commission's conclusions and orders that warrant the figures hypothesized in appellant's claims as to the fair present value of the property or render such orders arbitrary, unreasonable or unlawful, the judgment of the circuit court is affirmed. *Coles, J.,* not sitting.