Paul Leo BOEDEKER, a Minor, by Gerald L. Boedeker, His Father and Natural Guardian, Appellant,

v.

Larry Eugene WRIGHT, Respondent.

No. 46256.

Supreme Court of Missouri,

Division No. 1.

April 14, 1958.

Opinion Modified on Court's Own Motion and Rehearing Denied May 12, 1958.

J. Frederic Allebach, Robert L. Ross, Allebach & Ross, Albany, Russell N. Pickett, Eugene E. Andereck, Phil Hauck, Pickett, Andereck & Hauck, Trenton, for appellant.

J. Dorr Ewing, Joe Beavers, Ewing & Beavers, Maryville, for respondent.

COIL, Commissioner.

Paul L. Boedeker, through his father as natural guardian, claimed $25,000 as damages in his action for personal injuries sustained as a result of an accident on January 1, 1955, when an automobile, being driven by Larry Wright, defendant below, and in which Paul was a passenger, ran into the rear of a 1½-ton truck. The case was submitted on defendant's excessive speed and failure to maintain a proper lookout and on plaintiff's contributory negligence in having failed to request slower speed, a lookout, and that defendant not follow so closely. Plaintiff has appealed from the judgment entered on defendant's jury verdict and here contends that the trial court erred in ruling and commenting upon, and in the admission of, evidence, in permitting improper cross-examination, and in giving instructions.

Defendant, with plaintiff as a front-seat passenger, drove his father's automobile about four miles westwardly from Ravenwood on Missouri Highways 4 and 46, turned around and started back toward town. As one approaches the accident point, there is a long hill, followed by a shorter hill which curves to the left as it descends eastwardly. Apparently, as one proceeds toward the crest of the shorter hill and at certain places around the curve, a driver's view of other traffic is obscured. In any event, and sufficient for present purposes, defendant, as he drove eastwardly in the south lane of the east-west highway, saw ahead a comparatively slow-moving truck. Defendant started to his left to pass when he observed oncoming traffic. He thereupon swerved back to the south and, in an apparent attempt to get to the south shoulder in order to pass on the right of the eastwardly moving truck, the left front of defendant's car struck the right rear of the truck. The truck was propelled to the north side of the highway over a fence and for a considerable distance into a field. Defendant's car turned over two or three times and ended up some distance southeast of the impact point.

As relevant to a consideration of plaintiff's first contention, it should be here noted that the two vigorously contested issues were whether plaintiff was negligent and the nature and extent of his injuries. It was conceded, tacitly at least, that de-

fendant's speed was excessive and that plaintiff had received some injuries. And specifically, as to plaintiff's injuries, the issue was whether they were temporary and none of their symptoms and effects present or visible at trial time, or whether they were permanent and progressive and their symptoms and effects evident at trial time.

During his jury argument one of plaintiff's lawyers suggested that the only purpose of defendant and his counsel was to minimize the amount of the verdict by attempting to make the jury believe that plaintiff's injuries were not permanent. In that connection counsel pointed out that it was his opinion that defendant's lawyers had gone to extremes in attempting to discover plaintiff's post-accident activities through inquiry of plaintiff's friends and by taking depositions not only in the locality of plaintiff's residence but also in Columbia, Missouri, where plaintiff had attended the university. Counsel then said, "They made one mistake in their quest to try and save money, they went to a very fine doctor, a Doctor McElroy at Columbia, and they had this boy examined, and he found the boy was hurt." That argument was objected to on the ground that there was no evidence that Dr. McElroy had examined on behalf of defendant. After a short colloquy in the presence of the jury as to what the record was in that respect, the jury was excused and 65 minutes was consumed in an attempt to discover what the record showed.

The trial court, after advising the parties of what he intended to say, stated to the jury, "Gentlemen of the jury, this hour and five minutes has been spent by us trying to review the Reporter's notes to determine who is right and who is wrong about the testimony. The lawyers in their argument are supposed to and try to keep within the record, by that I mean they try to argue only about matters that have been testified to and that have been before you in the form of exhibits.

Now, it seems that the argument that Doctor McElroy, an examining physician of Columbia, Missouri, the argument that he made his examination at the request of the defendant seems to be wrong, the examination that was made down there was made at the request of the plaintiff or his · father. That seems to be the testimony here as nearly as we can find out from the Reporter's notes, which means that that part of the argument made to date where they have said that it was made—the examination was made at the request of the defendant should be disregarded by you, and I caution you to wipe that clear out of your mind, that it was made at the request of the plaintiff or his father, the examination or treatment of the plaintiff, and the defendant, apparently from the record had nothing to do with that. If you will take it from there, and disregard that statement. It was in error."

A full examination of the record shows that the trial court incorrectly advised the jury when he stated that the argument to the effect that Dr. McElroy had made an examination at the request of the defendant was wrong and erroneous, that the reporter's notes showed that the examination was made at the request of the plaintiff or his father, and that defendant had nothing to do with the examination. On the contrary, the record furnishes a sufficient basis for the jury reasonably to have found that the examination by Dr. McElroy was made on behalf of the defendant and that the questioned argument was proper. Thus, for present purposes, we shall assume that the trial court erred both in commenting on the evidence by telling the jury what the record showed and by erroneously stating what the record showed.

■ In our view, the trial court's errors in those respects do not require a reversal of the judgment. That is because the entire controversy or incident concerning which the court's statement was made pertained to the issue as to the nature and

extent of plaintiff's injuries, an issue which the jury did not consider.

Plaintiff contends that the trial court's statement cast an improper reflection upon his entire case, i. e., upon the accuracy and integrity of all his evidence and upon the accuracy of all of counsel's statements in argument; that the statement pervaded his entire case and caused the jury to unduly question all of his evidence. We have carefully analyzed the court's statement and, as we see it, apart from the facts that it constituted an improper comment on a matter pertaining to medical evidence and contained erroneous information with respect to that evidence, the statement told the jury (1) that the lawyers are supposed to argue only matters that are in evidence, and (2) that the jury was not to consider the argument that Dr. McElroy made the examination for defendant but was to disregard it.

We agree with plaintiff's contention that jurors pay close attention to the remarks and actions of a trial judge and are alert to detect any indication that he is convinced one way or another, or desires a certain result, or favors one contestant, or otherwise evidences any opinion on the merits. And we are cognizant of the fact that the circumstance that the jury waited one hour and five minutes while the search of the record was made magnified the entire incident far beyond any importance it otherwise could have had in the trial of the lawsuit. We are unable, however, to find that anything the trial court said in the above-quoted statement cast any improper reflection on plaintiff, the merits of his claim as to liability, upon the accuracy of any other of plaintiff's evidence, or upon any of plaintiff's counsel. We cannot believe that the jury would have been likely to have given the trial court's remarks any meaning beyond that which was conveyed by the plain language in which they were couched. That is to say, the jury most probably would believe, as the trial court said, that plaintiff's counsel erred in stating that Dr. McElroy examined plaintiff on be-

half of defendant and, if the jury reached the damages issue, that matter was to be eliminated from consideration in determining the nature and extent of plaintiff's injuries.

To illustrate further, we point out that this is not a situation in which plaintiff received a verdict and now claims that it is inadequate, and this is not a situation in which the nature and extent of the plaintiff's injuries were conceivably relevant considerations on the question of liability, i. e., either as to how the accident happened or as to whether plaintiff was injured at all. In either of those instances there would be little doubt that the court's statement would have been highly prejudicial and an entirely different situation would confront us. But eliminating, as we may, the statement's effect on the damages issue, and taking into account the fact that defendant conceded that plaintiff was injured to some extent, thus eliminating any issue of no liability because of no injury, and taking into account that there was no issue on liability to which the nature and extent of the injuries were relevant, we believe that the trial court's statement did not constitute error materially affecting the merits of the only issue considered by the jury.

■ We see nothing in the instant case to cause us to depart from the general rule that where evidence or argument is before the jury clearly bearing only upon the issue of the extent of plaintiff's damages, and the jury's verdict demonstrates that the jury has failed to reach that issue, plaintiff is not prejudiced thereby. Miller v. Riss & Co., Mo., 259 S.W.2d 366, 372 [7]; Conser v. Atchison, T. & S. F. Ry. Co., Mo., 266 S.W.2d 587, 592 [14–16].

The case chiefly relied on by plaintiff, Rose v. Kansas City, 125 Mo.App. 231, 102 S.W. 578, discloses a situation in which the nature and extent of plaintiff's injuries and the valuable correlative right of plaintiff's counsel to comment upon the failure of de-

fendant to have produced the doctor who had examined plaintiff on defendant's behalf, remained live issues even after the jury's verdict.

■ Plaintiff contends that the trial court erred in admitting hospital records in evidence. Apparently the particular part of the hospital record to which objection was made was the report of the radiologist. Our impression is that the record was sufficiently identified and the trial court did not err in admitting it, but we need not examine the question further or specifically decide it because the relevancy of the hospital record, including the X-rays and their interpretation, went to the issue of the nature and extent of plaintiff's injuries and, inasmuch as that record would not, under the facts of this case, have been relevant to any issue with respect to defendant's liability or plaintiff's contributory negligence, any error in its admission could not have been prejudicial. Cf. Gray v. St. Louis-San Francisco Ry. Co., 336 Mo. 864, 254 S.W.2d 577, 579 [1].

Plaintiff next contends that the trial court erred in giving instructions 4, 6, and 7 for the assigned reasons that they were repetitious burden-of-proof instructions, and that instruction 7 tended to confuse the jury because, even though defendant admitted his negligence, it specifically required the jury to find defendant negligent before the jury was to consider damages. Instruction 4 may best be described as a "catch-all" instruction. It cautioned the jury not to surmise or guess, told them to be guided solely by the evidence, instructed that the burden was on plaintiff to prove defendant's negligence, and finally told the jury that it should not be influenced by passion or prejudice. Instruction 6 was a burden-of-proof instruction and instruction 7 directed the jury to first determine defendant's negligence before considering the nature and extent of his injuries, with a reference therein to the fact that the burden of proof as to defendant's negligence was on plaintiff.

■ As we have heretofore noted, there was little, if any, real issue as to defendant's negligence as to speed for, as plaintiff points out, defendant's counsel twice said (once in the opening statement and again in the closing argument) that there was little doubt that the defendant was driving the car too fast. Plaintiff, however, by instruction 1 submitted in the conjunctive defendant's negligent speed and his failure to maintain a proper lookout. Thus, inasmuch as the jury needed to find failure to maintain a proper lookout as well as defendant's negligent speed, we properly cannot say that there was no real jury issue as to defendant's negligence.

■ We do agree with plaintiff, however, that even though only one of the three instructions was a burden-of-proof instruction as such, nevertheless the three instructions were repetitive in their burden-of-proof references. Inasmuch, however, as both instructions 4 and 7 were cautionary, and inasmuch as the trial court has a broad discretion not only in determining whether to give particular cautionary instructions but also to determine on motion for new trial whether the effect of any of them was prejudicial, and inasmuch as the instant trial court rejected plaintiff's contention that the effect of the three instructions here being considered was prejudicial, we hold that the giving of instructions 4, 6, and 7, if error, was not error sufficiently prejudicial to require reversal of the judgment. West v. St. Louis Public Service Co., Mo., 236 S.W.2d 308, 311 [3, 4] [5], 312 [6, 7].

Plaintiff contends that the trial court erred in permitting defendant to use plaintiff's deposition in cross-examining plaintiff's father. It appears that plaintiff's father testified on direct examination that prior to the accident plaintiff had had no back trouble. On cross-examination he answered that he was present at the time his son's deposition was taken and that he had heard his son say that he had had some back trouble prior to the accident.

The father explained, however, that while he had heard the statement, he meant and still meant that if there had been anything wrong with his son's back prior to the instant accident, he knew nothing of it and still knew nothing about it. All of the foregoing was over the objection of plaintiff.

It is here contended that such constituted improper cross-examination. We see no purpose to be served by a minute examination of the incident to determine whether the type of cross-examination was or was not technically proper. That is because we are convinced that the result of the entire incident was insignificant and, such effect as it had, was as beneficial to plaintiff as to defendant in that plaintiff's father made what appears to be a satisfactory explanation of his answer.

■ Likewise, plaintiff's further contention that the trial court erred in permitting the defendant to introduce an otherwise admissible hospital record in evidence during plaintiff's case is without merit. The matter was within the discretionary control of the trial court and in the absence, as here, of a demonstration of resulting prejudice we hold the trial court did not abuse its discretion. Patton v. Fox, 179 Mo. 525, 78 S.W. 804, 807; Meyers v. Drake, 324 Mo. 612, 24 S.W.2d 116, 121 [5, 6].

Plaintiff finally contends that the trial court erred in giving instruction 5, which directed a verdict for defendant if the jury found plaintiff contributorily negligent. Inasmuch as it is apparent that the defendant's verdict was the result of instruction 5, we set forth the instruction. Because of the fact, however, that sometimes, as in the instant case, an instruction which is set forth in an opinion is copied and used in a subsequent case, irrespective of what the court has said about it, we shall caution both before and after setting forth instruction 5 that we do not commend it and suggest that it is not a fully satisfactory contributory negligence instruction in a guest-passenger automobile accident case.

"You are instructed that Paul Leo Boedeker was required to exercise that degree of care that an ordinary[ily] prudent person under the same or similar circumstances would exercise for his own safety and could not intrust himself absolutely to the driver of the vehicle in which he was riding. In this connection you are further instructed that if you find and believe from the evidence that Larry Eugene Wright was negligent as in Instruction 1 described, if you so find, and if you further find that Paul Leo Boedeker at the time and place of the accident referred to in evidence had an adequate opportunity to influence the situation for safety by requesting Larry Eugene Wright to drive and operate the automobile he was driving at a slower rate of speed and by requesting him to keep a greater distance between the automobile he was driving and the truck ahead and by requesting him to keep a lookout for property and persons on the highway, if you so find, and if you find that Paul Leo Boedeker failed to so act to influence the situation for safety and if you further find that such failure to so act was negligence which contributed to cause his injuries mentioned in evidence, if you so find, then you must find for the defendant."

That instruction was copied almost verbatim from one given in Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912, 918, where it was held that it "was not such error, materially affecting the merits of this action, V.A.M.S. § 512.160, * * * that it can be said to be prejudicial and that the plaintiff is entitled to a new trial." The court remarked in that case, however, that the instruction was not a model. Apparently the instruction was there held good against the same kind of an attack as is here made. In any event, present plaintiff contends that the instruction was not supported by the evidence, erroneously submitted hypotheses of plaintiff's contributory negligence which were not hypothesized in plain-

tiff's instruction 1 as defendant's primary negligence, and prejudicially misled the jury in failing to hypothesize facts from which the jury could have found when plaintiff's duty to act arose.

■ There was evidence to support the hypothesis that plaintiff negligently failed to request defendant to drive at a slower speed in time for defendant to have adopted the suggestion and to thereby have avoided the collision. There was testimony from which the jury reasonably could have found that defendant drove his father's automobile eastwardly at a speed between 85 and 100 miles per hour, and that plaintiff saw the truck with which defendant later collided when it was one-half mile away. The other hypotheses, plaintiff's failure to request that defendant cease driving so closely behind the truck, and failure to request that defendant maintain a lookout for other traffic, seem to be integrally related to the hypothesis as to speed, but we need not determine whether the evidence specifically supported those two hypotheses. That is because the failures to make each of the three requests were submitted conjunctively, and, under the facts of this case, if any one of those was not supported by sufficient evidence, the conjunctive submission cured the error. Knox v. Weathers, supra, 257 S.W.2d 915 [5–7].

■ There is no merit in plaintiff's contention that defendant in drawing his contributory negligence instruction was required to include therein only those same hypotheses of negligence as were submitted in plaintiff's verdict-directing instruction. Obviously defendant properly may submit any negligence of plaintiff's which the evidence tends to show was a proximate contributing cause of plaintiff's injury.

The meritorious contention with reference to instruction 5 is that it fails to sufficiently advise the jury of plaintiff's duty (and the time when the duty to act arose) as a guest passenger in defendant's automobile. It will be noted that the instruc-

tion requires the jury to find that at the time and place of the accident (of course, the jury probably would understand that the time and place of the accident included the approach to the impact point), plaintiff "had an adequate opportunity to influence the situation for safety" by acting in specified ways. It appears that the language ("had an adequate opportunity to influence the situation for safety") was taken from a statement in Berry Law of Automobiles, 7th Ed., § 5.172, pp. 260–261, and that the quotation has been included in several Missouri cases. The full statement, however, appearing in Berry is, "When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly to his injury, this is negligence which will bar recovery."

It is apparent that instruction 5 does not contain language specifically including or submitting the first part of the statement, viz., that the dangers referred to are those which are either reasonably manifest or are known to the invited guest, and as has been recently stated, "In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle," Toburen v. Carter, Mo., 273 S.W.2d 161, 164 [1, 2], and a guest passenger "in the exercise of ordinary care is not required to keep a constant lookout and to make suggestions to the driver concerning the manner of operating the car," Ketcham v. Thomas, Mo., 283 S.W.2d 642, 645 [1, 2].

We are of the opinion that the requirement of instruction 5 to find that plaintiff had an "adequate opportunity to influence the situation for safety" reasonably would have been understood by a jury as meaning that the plaintiff, in order to have had an adequate opportunity to have made the situation safe, would have to have had

knowledge or notice of impending danger in time for at least one of the conjunctively listed actions to have been effective. The real question, as we see it, is whether the jury would also have understood that the knowledge or notice which plaintiff had to have had (i. e., under the terms of the instant instruction) was actual knowledge or notice rather than constructive knowledge or notice. If the jury was likely to understand that the instruction referred to constructive knowledge or notice as well as to actual knowledge or notice, i. e., that plaintiff in the exercise of commensurate care should have known, etc., then there was no requirement that the jury find that plaintiff had a duty to have discovered the danger only because of some prior visible lack of caution on the part of defendant or, if he had any such duty, when it arose and whether plaintiff's warnings or requests thereafter could have been in time to have avoided the collision. And in that connection, it is true, as noted, that there was evidence to support the "failure to request a slower speed" hypothesis of instruction 5, but there was also evidence from which the jury reasonably could have found that plaintiff did not have actual knowledge or notice of impending danger in time to have so acted soon enough to have avoided the collision.

We here note that the trial court gave plaintiff's instruction 3 which was: "The Court instructs the Jury that if you find and believe from the evidence that at the time and place of the accident and under the circumstances resulting in his injury, the Plaintiff, Paul Leo Boedeker, exercised ordinary care—that is, such care as an ordinarily prudent person would exercise under like circumstances—then he was not guilty of contributory negligence and the Jury would not be warranted in finding against the Plaintiff on that ground. The burden of proof is on the Defendant to show by the greater weight of all the evidence that Plaintiff, Paul Leo Boedeker was not exercising ordinary care, and that such failure to exercise ordinary care di-

rectly contributed to his injury and unless the Defendant has proved such facts, you cannot find for the Defendant on the defense of contributory negligence."

While instruction 3 did not purport to cover the deficiency noted in instruction 5, still it tended to clarify to some extent the total charge as to contributory negligence.

■ It is our conclusion that, although there was a possibility that a jury would have understood the language of instruction 5 as meaning that plaintiff had the duty to have requested a slower speed if he had the opportunity to do so at any time during defendant's entire approach to the impact point, even though such opportunity existed only by reason of a duty to maintain a lookout, which duty, if any, and the time it arose, were not hypothesized in the instruction, nevertheless, the possibility of instruction 5 being so understood and construed, under the instant facts, was not likely enough to justify branding the instruction as a misdirection to the jury or to justify a holding that it omitted an essential element prerequisite to a defendant's verdict based on plaintiff's contributory negligence.

As we have noted, the instruction needed and needs clarification in order to be fully satisfactory. We think, however, that the situation presented was one where, if plaintiff believed that instruction 5 failed to clearly hypothesize the circumstances under which the jury could or should find him negligent, he should have offered a clarifying instruction. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496, 501.

The judgment is affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.